UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALICIA B.[1],

                Plaintiff,

                          Civil Action No. 25-10627

v.

                          David R. Grand
                          United States Magistrate Judge[2]

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

### OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 9, 11)

Plaintiff Alicia B. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act").  Both parties have filed summary judgment motions.  (ECF Nos. 9, 11).

For the reasons set forth below, the Court finds that the ALJ's conclusion that Plaintiff is not disabled under the Act is supported by substantial evidence.  Thus, Plaintiff's Motion for Summary Judgment **(ECF No. 9)** will be **DENIED**; the Commissioner's Motion for Summary Judgment **(ECF No. 11)** will be **GRANTED**; and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The parties have consented to the undersigned exercising jurisdiction over all proceedings in this civil action pursuant to 28 U.S.C. § 636(c).  (ECF No. 6).

the decision of the Commissioner of Social Security will be **AFFIRMED**.

### A.   Background

Plaintiff was 50 years old at the time of her alleged onset date of February 20, 2020, and at 5'3" tall weighs approximately 235 pounds.  (PageID.84, 288).[3]  She completed high school and obtained travel agent and medical assistant certifications.  (PageID.65, 289).  She worked as a corporate travel agent between November 2014 and August 2017, and then as a home health care aide from January to February 2020, when she quit because of her medical problems.  (PageID.65-66, 288, 290).  She now alleges disability primarily as a result of neck and knee pain, positional vertigo, sleep apnea, depression, and anxiety.  (PageID.84, 288, 298).

After Plaintiff's applications for DIB and SSI were denied at the initial level on November 17, 2022 (PageID.139-42, 149-52), and on reconsideration on June 12, 2023 (PageID.160-62, 164-66), she timely requested an administrative hearing, which was held on January 29, 2024, before ALJ Roy LaRoche (PageID.58-78).  Plaintiff, who was represented by attorney Wesley Lamey, testified at the hearing, as did vocational expert ("VE") Joanne Pfeffer.  (*Id.*).  On February 9, 2024, the ALJ issued a written decision finding that Plaintiff is not disabled under the Act.  (PageID.36-51).  On January 16, 2025, the Appeals Council denied review.  (PageID.20-24).  Plaintiff timely filed for judicial review of the final decision on March 6, 2025.  (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's

---

[3] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 5.

medical record, disability reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will refer and cite to the transcript as necessary in its discussion of the parties' arguments.

### B. The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the

3

claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at \*7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Plaintiff is not disabled under the Act. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of February 20, 2020. (PageID.38). At Step Two, the ALJ found that she has the severe impairments of obesity, benign paroxysmal positional vertigo, degenerative disc disease of the cervical spine, osteoarthritis, obstructive sleep apnea, depression, and anxiety. (*Id.*). At Step Three, the ALJ found that Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (PageID.39).

The ALJ then assessed Plaintiff's RFC, concluding that she is capable of performing light work, with the following additional limitations: can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can have occasional exposure to extreme cold, wetness, vibration, unprotected heights, and dangerous moving machinery; is limited to work that involves simple, routine, repetitive tasks involving only simple work-related decisions with few, if any, workplace

changes; can perform work that requires quota-based tasks, as opposed to production requirements; and can have no more than incidental contact with coworkers (*e.g.*, she can be in the vicinity of coworkers, but the job duties cannot require interaction with coworkers) and no contact with the public.  (PageID.42).

At Step Four, the ALJ found that Plaintiff is unable to perform any of her past relevant work.  (PageID.49).  At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Plaintiff is capable of performing the light work jobs of inspector (197,000 jobs in the national economy), router (300,000 jobs), and collator operator (54,000 jobs).  (PageID.50).  As a result, the ALJ concluded that Plaintiff is not disabled under the Act.  (PageID.51).

## C.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  The phrase "substantial evidence" is a "term of art …."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  *Id.* (internal citations omitted).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such

evidentiary sufficiency is not high.   Substantial evidence …   is 'more than a mere scintilla.'"   *Id.* (internal citations omitted).   Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.   *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).   The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.   *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.   *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).   If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."   *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

### D.     Analysis

Before this Court, Plaintiff makes only one argument – namely, that the ALJ's decision is not supported by substantial evidence because he erred in evaluating the medical opinion of her treating physician, Annissa Hammoud, M.D.   (ECF No. 9, PageID.3085-

91).  For the reasons set forth below, the Court disagrees.

### 1. The Relevant Medical Evidence

Before the Court considers the ALJ's evaluation of Dr. Hammoud's opinion, a discussion of the other relevant medical evidence of record is warranted.[4]

On December 12, 2019, prior to the alleged onset date, Plaintiff underwent x-rays of her cervical spine after she complained to Dr. Hammoud of neck pain.  (PageID.531-32).  They showed loss of normal cervical lordosis; mild anterolisthesis of C3 on C4 and C4 on C5; mild multilevel degenerative changes with facet osteoarthritis; and mild neuroforaminal narrowing of left C3-C4, C4-C5, and C5-C6.  (*Id.*).  Plaintiff then attended physical therapy approximately eight times between December 2019 and April 7, 2020.  (PageID.572-622).

More than two years passed before Dr. Hammoud again referred Plaintiff for x-rays of her cervical spine due to complaints of neck pain.  On July 12, 2022, those x-rays showed chronic loss of the normal cervical lordosis with minimal multilevel anterolisthesis of C3 on C4, C4 on C5, and C5 on C-6 (unchanged) and no significant focal neural foraminal narrowing.  (PageID.547-78).  However, the x-rays also showed chronic and significant widening of the right C6-C7 facet joint with a maximum 13 mm gap between the articular surfaces – a finding that was "visible as far back as 10/07/2016, but appears progressive."  (*Id.*).  Follow-up x-rays of the cervical spine showed redemonstration of lucency in the

---

[4] Because Plaintiff's argument alleges error only with the ALJ's evaluation of her *physical* impairments – specifically her neck pain – the Court will focus its discussion on medical evidence most relevant to that condition.

expected location of the right C7 inferior facet, which could better be evaluated with cross-sectional imaging.  (PageID.1812-13).

As a result, on August 17, 2022, Plaintiff underwent an MRI of her cervical spine, which showed no right C6-C7 facet joint abnormality, multilevel degenerative changes, and no high-grade spinal canal or neural foraminal stenosis.  (PageID.1833-34).  Srikrishna Chandran, M.D., who explained these findings to Plaintiff, noted that there was "some progression of the degeneration – as may be expected with time" and perhaps "slight progression of the previously noted disc herniation" at C6-C7.  (PageID.1853).  Physical therapy was recommended, both to help Plaintiff's symptoms and to potentially slow the rate of degeneration.  (*Id.*).

Plaintiff began physical therapy with Sarabeth Ballheim, PT on September 27, 2022, reporting neck pain dating back to "junior high," worse on the right, with some weakness in her right hand.  (PageID.702).  On examination, her range of motion was somewhat limited, and she had increased tension/tenderness, but full strength.  (PageID.702-08). Plaintiff attended ten therapy sessions with PT Ballheim in the four-month period between that date and January 26, 2023, when she was discharged because she was moving. (PageID.702-853).  Upon discharge, she reported short term relief from manual therapy, but said she was still experiencing chronic neck and upper back pain.[5]  (PageID.852).

After relocating, Plaintiff re-started physical therapy on May 1, 2023, this time with

---

[5] On December 2, 2022, Plaintiff returned to Dr. Chandran, who discussed with her the possibility of a right C5, C6, and C7 medial branch block to radiofrequency ablation procedure. (PageID.800).  Because Plaintiff was experiencing "some improvement" with physical therapy, however, the decision was made to "continue with more conservative measures."  (*Id.*).

Amy McCallumore, PT. (PageID.875-79). PT McCallumore recommended physical therapy twice a week for 90 days and characterized Plaintiff's rehabilitation potential as "good." (PageID.878).

On July 18, 2023, Plaintiff saw Miguel Linares, M.D., complaining of right shoulder pain for the past three years. (PageID.1327-32). X-rays showed no bony deformity, fracture, subluxation, or signs of osteoarthritis, and she was diagnosed with rotator cuff tendinosis. (PageID.1332). An ultrasound was performed on July 19, 2023, which showed mild to moderate anterior supraspinatus tendinosis with a bursal-surface tear with possible small, focal extension to the articular surface and mild thickening of the subacromial subdeltoid bursa. (PageID.1388-89). Plaintiff received a steroid injection in her right shoulder on August 4, 2023 (PageID.2385-86). On August 30, 2023, Plaintiff saw Dr. Linares again, and he continued to recommend physical therapy, ice, and NSAIDs, as needed. (PageID.1351).

2.    *Dr. Hammoud's Opinion*

On December 13, 2022, Dr. Hammoud completed a medical source statement, noting that Plaintiff's diagnoses included anxiety, depression, osteoarthritis of both knees, neck pain, and vertigo. (PageID.755). She noted that Plaintiff takes ibuprofen and Flexeril and does physical therapy for her neck pain. (*Id.*). Dr. Hammoud opined that Plaintiff can sit less than two hours in an eight-hour workday, stand in increments up to 15 minutes for less than two hours total in an eight-hour workday, and walk up to one block; requires seven minute-long breaks every hour to walk around; must be able to shift at will from sitting, standing, or walking; needs unscheduled work breaks every hour lasting 10

9

minutes; needs to elevate her legs 50% of the day below heart level; can occasionally lift/carry up to 10 pounds but can never lift/carry 20 pounds or more; can frequently turn her head right/left and hold her head in a static position; can occasionally look down and look up; can never climb ladders or stairs; and has significant limitations in reaching, handling, and fingering.  (PageID.756-58).  Dr. Hammoud further opined that Plaintiff would likely miss more than four days of work per month, would likely be off task more than 25% of a regular workday, and is incapable of even low stress jobs.  (*Id.*).

       3.      *The ALJ Properly Evaluated Dr. Hammoud's Opinion*

Plaintiff now argues that the ALJ erred in finding Dr. Hammoud's opinion "largely unpersuasive."  (ECF No. 9, PageID.3085-91).  Under the revised regulations applicable to claims, like Plaintiff's, filed on or after March 27, 2017, ALJs must evaluate the persuasiveness of medical opinions and "explain how [they] considered the supportability and consistency" of such opinions – the two "most important" factors – in their decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  As to the second factor (consistency), "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  "The regulations require that the ALJ sufficiently articulate his reasoning for his persuasiveness findings."  *Mistie W. v. Comm'r of Soc. Sec.*, No. 23-10696, 2024

WL 992160, at *3 (E.D. Mich. Mar. 7, 2024) (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 902 (E.D. Mich. 2021)).

The ALJ considered the medical evidence of record discussed above and found that Plaintiff has the RFC to perform light work, with certain additional limitations. (PageID.42).  In reaching this conclusion, the ALJ evaluated Dr. Hammoud's December 13, 2022 medical source statement but found it "largely unpersuasive."  (PageID.47).  In reaching this conclusion, the ALJ explained:

> In terms of supportability, Dr. Hammoud relies on diagnoses of anxiety, depression, osteoarthritis of knees, neck pain, and vertigo. She further stated [Plaintiff] has symptoms including pain in her knees, back and neck, along with fear of judgment, panic attacks, and poor sleep.  Regarding consistency, the opinion is largely inconsistent with the medical evidence of record which is relatively conservative treatment limited to physical therapy, NSAIDs, Flexeril, and ice.  It is also largely inconsistent with [Plaintiff's] subjective reports of being able to cook 5 days per week, clean 1 day per week, go shopping 3 times per week (if the items are not too heavy to carry), lift up to 15-20 pounds, and drive every other day.

(*Id.*) (internal citations omitted).

Plaintiff first asserts that the ALJ erred in relying on her conservative treatment as a basis for discounting Dr. Hammoud's opinion, arguing that this analysis "does not provide proper consideration of the important factor of consistency."  (ECF No. 9, PageID.3086).  As the Commissioner points out, however, ALJs are allowed to consider the nature of a plaintiff's treatment as part of the consistency evaluation.  (ECF No. 11, PageID.3101) (citing *Hopkins v. Comm'r of Soc. Sec.*, No. 23-5696, 2024 WL 3688302, at *4 (6th Cir. Apr. 9, 2024) (upholding the ALJ's consistency analysis where the ALJ found the opinion not consistent with other evidence of record, "including the conservative level

11

of treatment received, the longitudinal mental status exams across multiple providers, and the claimant's ability to live independently") (internal quotations omitted)[6] and *Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at *3 (6th Cir. Sept. 28, 2023) (affirming the ALJ's decision to discount the plaintiff's treating physician's opinion, in part, due to the conservative treatment received)).  Thus, to the extent Plaintiff argues that the ALJ erred in considering her conservative treatment as part of the consistency analysis, such an argument fails.

Plaintiff then complains that the ALJ provided "no articulation how the physical therapy records are 'inconsistent' with Dr. Hammound's (sic) opinion."  (ECF No. 9, PageID.3087).  Specifically, Plaintiff cites to various physical therapy records, in which deficiencies in her range of motion were noted, and argues that PT Ballheim's conclusion that these "objective limitations" limit her functioning in certain respects is "highly consistent" with Dr. Hammoud's opinion.  (*Id.*, PageID.3087-88).  But the ALJ did not determine that Plaintiff's *physical therapy records* were inconsistent with Dr. Hammoud's opinion.  Rather, as explained above, the ALJ concluded that the fact that Plaintiff was receiving only *conservative treatment* – including physical therapy, NSAIDs, Flexeril, and ice – was inconsistent with the extreme limitations imposed by Dr. Hammoud.

---

[6] In her reply brief, Plaintiff seeks to distinguish *Hopkins*, arguing that, unlike in *Hopkins*, the ALJ here failed to articulate *how* the underlying records detailing the conservative treatment at issue were inconsistent with the medical opinion being evaluated.  (ECF No. 12, PageID.3108). Plaintiff's comparison misses the mark, however: neither here, nor in *Hopkins*, did the ALJ detail the findings set forth in the underlying treatment records (physical therapy here, and mental health counseling in *Hopkins*).  Rather, both ALJs simply found the restrictive medical opinions at issue inconsistent with the conservative *nature* of the treatment provided, which, as noted, is a valid consideration by the ALJ.  Thus, *Hopkins* is on point.

12

(PageID.47).  Again, that was a valid reason to discount Dr. Hammoud's opinion.[7]  *See*

*Hopkins*, 2024 WL 3688302, at \*4; *Adams*, 2023 WL 6366106, at \*3. Thus, the Court finds

no error in the ALJ's evaluation of the consistency factor.[8]

Plaintiff also argues that the ALJ's supportability analysis is "lacking" because the

ALJ did not consider her 2019 and 2022 cervical spine x-ray results.  (ECF No. 9,

PageID.3088-89).   This argument is flawed in several respects.   First, as Plaintiff

acknowledges, the ALJ did in fact discuss these x-ray results, as well as her August 2022

MRI findings, in the decision, noting that they were "somewhat inconsistent with the level

and frequency of pain reported by [Plaintiff]."  (PageID.43) (citing PageID.679-83, 688).

Second, Dr. Hammoud did not indicate that she relied on Plaintiff's x-ray results to support

her opinion (PageID.755), and Plaintiff fails to demonstrate how the mild findings shown

on her x-rays would corroborate Dr. Hammoud's extreme limitations.  Finally, all that

aside, diagnostic studies alone do not establish functional limitations.  *See Hughes v.*

*Comm'r of Soc.*, No. 22-10663, 2022 WL 19518457, at \*6 (E.D. Mich. Oct. 17, 2022) (x-

---

[7] Moreover, while Plaintiff maintains that the physical therapy records are consistent with Dr. Hammoud's opinion (ECF No. 9, PageID.3087-3088), the doctor herself did not reach that conclusion.  In fact, despite specifically being asked, Dr. Hammoud did not identify *any* clinical findings or objective signs that corroborated her opinion.  (PageID.755).

[8] The Court also notes that the ALJ found Dr. Hammoud's opinion unpersuasive, in part, because it was inconsistent with Plaintiff's "subjective reports of being able to cook 5 days per week, clean 1 day per week, go shopping 3 times per week (if the items are not too heavy to carry), lift up to 15-20 pounds, and drive every other day." (PageID.47) (internal citations omitted).  Plaintiff does not argue that the ALJ overstated her activities of daily living and, indeed, the ALJ's characterization is consistent with Plaintiff's testimony, function reports, and statements made to medical providers.  (*E.g.*, PageID.65, 70, 299-302, 735).  Moreover, it is entirely appropriate for an ALJ to consider a claimant's activities of daily living when evaluating the consistency factor. *See, e.g., West v. Comm'r of Soc. Sec.*, No. 3:24-CV-01209-JRK, 2025 WL 368704, at \*9 (N.D. Ohio Feb. 3, 2025).

13

rays alone say nothing about the severity of a condition) (citing *Flowers v. Comm'r of Soc. Sec.*, No. 14-12449, 2015 WL 4274961, at *4 (E.D. Mich. July 14, 2015) (declining to remand because "the MRI and the CT scan reports provide no insight into what additional limitations Plaintiff may suffer from based on the diagnoses therein" and "[a]t most, Plaintiff leaves the ALJ and the Court to speculate with regard to any possible limitations related to his neck")).  Thus, Plaintiff has identified no error warranting remand in the ALJ's supportability analysis.[9]

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, that decision will be affirmed.

### E.    Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Summary Judgment **(ECF No. 9)**; **GRANTS** the Commissioner's Motion for Summary Judgment **(ECF No. 11)**; and **AFFIRMS** the decision of the Commissioner of Social Security.

**IT IS SO ORDERED.**

Dated: March 2, 2026                          s/David R. Grand
Ann Arbor, Michigan                         DAVID R. GRAND
                                                         United States Magistrate Judge

---

[9] Plaintiff also argues that the ALJ's errors are not harmless because, if Dr. Hammoud's opinion had been adopted, she either would have been found disabled through application of the Medical-Vocational Guidelines or because the VE testified that there would be no jobs available.  (ECF No. 9, PageID.3090-3091).   As explained above, however, the ALJ properly found Dr. Hammoud's opinion largely unpersuasive, and thus he was not required to follow vocational evidence that accounted for the limitations the doctor imposed.  *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ … is required to incorporate only those limitations accepted as credible by the finder of fact.").

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 2, 2026.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager